**Willie Homer TAYLOR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–643.**

Court of Criminal Appeals of Oklahoma.

Jan. 28, 1982.

D. D. Hayes, Bonds, Matthews, Bonds & Hayes, Muskogee, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Willie Homer Taylor, hereinafter referred to as the defendant, was convicted of Murder in the Second Degree,

in violation of 21 O.S.Supp.1973, § 701.2,[1] in the District Court of Muskogee County, Case No. CRF–76–64, he was sentenced to fifty (50) years' imprisonment and he appeals.

On the night of February 17, 1976, Zanita Taylor was in Muskogee, Oklahoma, at the home of her grandmother, with whom she was staying while on leave from the Air Force Reserves to testify against the defendant in criminal proceedings pending against him. Ms. Taylor was married to the defendant when the crime was committed and at the time of the trial, but she had filed for a divorce. Later that night, she heard noises in the backyard and feared that the defendant might be outside. Cecil Collins, her brother-in-law, who was staying at the house, armed himself with a knife; and Darrell Abernathy, a visitor, armed himself with a crowbar. All the lights in the house, except one, were turned off. When Mr. Collins attempted to prevent the defendant's entry into the house through a back window, he was stabbed one time in the heart by the appellant, and died a few minutes later.

The defendant testified that he frequently visited Ms. Taylor at her grandmother's house, and that he always entered through the rear window in order to avoid disturbing the grandmother. He stated that he had his pocket knife out because the neighborhood was dangerous, and that when Collins began choking him he slashed at his hand so that he might free himself. He fled the scene and was apprehended some twenty (20) months later.

## I.

As his first assignment of error, the defendant asserts that the trial court erred in allowing the appellant's wife to testify against him. 22 O.S.1971, § 702, creates a marital privilege which provides that one spouse may not testify against the other in a criminal prosecution. On October 1, 1978, the Oklahoma Evidence Code became effec-

tive, and 22 O.S.1971, § 702, is not specifically repealed in the repealer clause. However, a section of the new code does deal specifically with the marital privilege in criminal cases. Laws 1978, ch. 285, § 504, now 12 O.S.Supp.1980, § 2504, prohibits one spouse from testifying against another with regard to confidential communications.

■ In *City of Sand Springs v. Department of Public Welfare*, 608 P.2d 1139 (Okl. 1980), the Oklahoma Supreme Court held that a statute may be repealed by implication only if there are irreconcilable conflicts between the statutes; where such a conflict exists, the latter statute modifies the earlier. The latter statute in this case would bar only testimony regarding confidential communication between spouses. Under 22 O.S.1971, § 702, any testimony by one spouse against the other, except in very limited areas above, is prohibited. In the evidence subcommittee's notes following Section 2504, it is stated that this section constitutes a substantial departure from existing Oklahoma law. Most significantly it limits the marital communication privilege from preventing a spouse in a criminal proceeding from testifying as to any confidential communications between the accused and the spouse. The intent of the Legislature to change prior Oklahoma law is evident.

■ The defendant further argues that since the crime was committed prior to the adoption of the Oklahoma Evidence Code in 1978, he should be governed by the earlier statute, and that he had an "accrued right" under the law then in force to prevent his wife from testifying against him. Similar arguments have been rejected in the past. In *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), Mr. Justice Rehnquist, speaking for a majority of the Supreme Court, stated:

> Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto. For exam-

---

1. This statute was subsequently repealed. See, Laws 1976, 1st Ex.Sess., ch. 1, § 2, now 21 O.S.Supp.1980, § 701.8.

ple, in *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. Id., at 589, 4 S.Ct. 202 [210], 28 L.Ed. 262.

In *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204, (1898), a defendant was convicted of murder solely on circumstantial evidence. His conviction was reversed by the Missouri Supreme Court because of the inadmissibility of certain evidence. Prior to the second trial, the law was changed to make the evidence admissible and defendant was again convicted. Nonetheless, the Court held that this change was procedural and not violative of the Ex Post Facto Clause.

In the case at bar, the change in the statute was clearly procedural, and in accordance with *Dobbert*, supra, and the cases cited therein, we are of the opinion that the defendant's first assignment of error is without merit.

## II.

■ As his second assignment of error, the defendant alleges that the trial court committed error in admitting evidence of other crimes. At the time of the homicide, the defendant had three assault and battery charges pending against him, and Ms. Taylor was to be a witness in those cases. The defendant made a motion in limine seeking the exclusion of the crimes from admission into evidence. The trial court ruled that the evidence of the pending charges could be admitted in order to set a background for the alleged incident, and defense counsel objected to this ruling. In *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), this Court restated the general rule that one is to be convicted, if at all, by evidence which shows one guilty of the offense charged, and evidence that one is guilty of other offenses must be excluded. There are five exceptions to this general rule, one of which holds that evidence of other crimes may be admissible where it tends to establish a motive for the crime charged. In *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980), this Court upheld the lower court's ruling allowing the admission of evidence to show motive. In that case the trial court allowed the admission of evidence showing that the defendant had an affair to establish the motive for the murder of the husband of one of the defendants. In *Jones v. State*, 542 P.2d 1316 (Okl.Cr.1975), evidence that the defendant had earlier pled guilty to robbery was admitted to prove the defendant's motive for murder. The State established that the defendant put his identification on the victim and then burned the corpse to avoid imprisonment on the robbery charge. In *Frye*, supra, this Court ruled that while latitude is permitted in the admission of evidence to establish motive, the fact that the evidence is weak goes to its weight, a jury question, rather than its admissibility. In the case before us, the evidence of other crimes was admitted to show the defendant's motive in attempting to enter the house; thus, it was clearly admissible to the exception of the general rule, excluding evidence of other crimes.

## III.

■ As his final assignment of error, the defendant asserts that the trial court erred in instructing the jury regarding other crimes, by giving Instruction No. 10.[2] We

---

2. Instruction No. 10 is as follows:

There has been evidence to indicate that the Defendant was at the time of the alleged incident under charge for the commission of an offense other than the one he is on trial for at this time. You are instructed that you may consider the existence of such a charge against the Defendant for the limited purpose of bear-

find this instruction to be an admonishment as required by the majority decision in *Burks*, supra. Accordingly, this assignment of error is without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is AFFIRMED.

BRETT, P. J., concurs.

CORNISH, J., concurs in results.

ing upon the Defendant's motive for being at the scene of the homicide in this case and for no other reason whatsoever.